### KRAMER et al. v. HARSCH.

(Circuit Court of Appeals, Third Circuit. February 23, 1922.)

No. 2788.

1. **Sales ⬱81(1)—Statement seller could deliver within stated time is not agreement to do so.**

Statement of seller of sugar that he could deliver within seven days is not equivalent to a statement that he would make such delivery, and does not establish a promise to do so.

2. **Evidence ⬱441(1), 461(1)—Evidence of parol agreement inadmissible to vary written contract or show parties' intent.**

In the absence of fraud, accident, or mistake, parol evidence is not admissible to vary or contradict the terms of a written instrument by showing the intent of the parties or their real agreement to be different from that expressed in the writing.

3. **Evidence ⬱397(2)—Oral negotiations are merged in written contract.**

The execution of a written contract supersedes and merges all oral negotiations concerning its terms, and the whole engagement of the parties is presumed to have been reduced to writing.

4. **Evidence ⬱442(6)—Written contract of sale held to exclude oral evidence of agreement for delivery.**

Where a complete contract for the sale of sugar was contained in telegrams and letters exchanged between the parties after the seller had refused to accept an order by telephone and none of the correspondence specified a time for delivery, oral evidence that the seller agreed to deliver within seven days is inadmissible.

In Error to the District Court of the United States for the Western District of Pennsylvania; W. H. Seward Thomson, Judge.

Action by A. K. Harsch against Max Kramer and another, partners trading as the Kramer-Horn Company. Judgment for plaintiff, and defendants bring error. Reversed, and new trial granted.

J. D. Wetmore, of New York City, and Stonecipher & Ralston, of Pittsburgh, Pa. (Frank W. Stonecipher, of Pittsburgh, Pa., of counsel), for plaintiffs in error.

Charles A. O'Brien and Thomas H. Hasson, both of Pittsburgh, Pa., for defendant in error.

Before WOOLLEY and DAVIS, Circuit Judges, and THOMPSON, District Judge.

DAVIS, Circuit Judge. A. K. Harsch, plaintiff below, brought suit in the common pleas court of Allegheny county against Kramer and Horn, who removed the case to the District Court.

The evidence disclosed the following facts: On or about July 1, 1920, plaintiff, a resident of Pittsburgh, wrote to the Harlem Sugar Company of New York for quotations on sugar. The letter was referred to defendants, who telegraphed plaintiff that they could "ship immediately three cars of seven hundred bags each car at twenty-four seventy-five, f. o. b. New York. Letter credit terms." On receiving this telegram plaintiff called by phone the defendants, who told her that, if she desired to place an order, it must be by letter or telegram. Thereupon plaintiff wrote the defendants that she would purchase three

cars, and, instead of letter of credit for entire amount, she would pay 15 per cent. on signing contract and balance on draft with bill of lading attached. Defendants telegraphed that this arrangement would be satisfactory, and on July 6, 1920, plaintiff telegraphed:

"Wire received. Will accept three cars. Will mail check immediately."

On the following day defendants wrote plaintiff stating that on receipt of her check for 15 per cent. of the purchase price they would book her for "two thousand one hundred (2,100) bags of American refined fine granulated sugar, prompt shipment, at $24.75 per hundred pound bags, f. o. b. New York, net cash upon presentation of sight draft with bill of lading attached." Plaintiff sent check for $2,677.50, which was 15 per cent. of the purchase price of one car. This car was shipped and paid for. Plaintiff was unable to raise 15 per cent., or $5,355, on the other two cars. Accordingly they changed the terms, and it was agreed that plaintiff should deposit $4,000, or $2,000 on each of the remaining two cars, but she was unable to do this, and later sought to have the terms of a contract of sight draft with bill of lading attached, which she had with the city of Pittsburgh, substituted, but the defendants would not agree to this.

On July 19, 1920, she wired defendants, "Outside of present order can you furnish me sugar at twenty-three fifty." A telephone conversation took place between them that day, and exactly what was said is in dispute. The following day she telegraphed the defendants $3,000, and three days later she sent check for $1,000. On receipt of the $3,000 defendants shipped two cars of sugar, and upon her statement over the phone on July 23, 1920, that the $1,000 check had actually been mailed, they sent another car. Defendants allege the $4,000 applied to the purchase price of the two cars on the original contract, and that they shipped another car on the new contract because she was badly in need of sugar and promised to pay for it on arrival.

The sugar did not arrive in Pittsburgh until August 5, 1920. The city of Pittsburgh had at this time canceled its contract with the plaintiff, who on the following day refused to take any of the sugar, and defendants sold it in the open market. Plaintiff demanded the return of the $3,000 telegraphed on July 20th, she having already stopped payment on the $1,000 check mailed on July 23d. The defendants refused to return it, and the plaintiff issued a foreign attachment against the money due them from the H. J. Heinz Company, which purchased the sugar.

In her statement of claim the plaintiff alleged that on July 9, 1920, she entered into an oral contract with the defendants for three carloads of sugar to be shipped promptly and delivered in Pittsburgh within seven days from the date of the contract, and that they failed to make delivery within the seven days and caused the loss of which she complains.

The defendants absolutely denied the making of an oral contract, and set out the foregoing letters and telegrams which they contend constitute the written contract. They alleged performance of the contract and set up a counterclaim for damages for plaintiff's refusal to accept and pay for the sugar.

There are quite a number of assignments of error, but all of them may be reduced to the one question of whether or not the contract was a written contract and should have been so determined by the court. If it should not have been so held as a matter of law, it was properly left to the jury to determine whether or not it was oral or partly oral and partly written.

After the plaintiff's inquiry was referred, by the Harlem Sugar Company, to the defendants, who wired plaintiff on July 2, 1920, that they could "ship immediately three cars of seven hundred bags each car at twenty-four seventy-five, f. o. b. New York," a conversation over the telephone took place in which the plaintiff alleges that the defendants said:

"They could make deliveries to me in Pittsburgh within seven days."

She further testified that the defendants in that same conversation said:

"If I wanted any sugar to put it in writing, a letter or telegram, preferably a telegram; that they would take no orders over the telephone. I told them I would, and I immediately wired them."

Again, referring to that conversation over the telephone, plaintiff testified that defendants said to her:

"They accepted no order by telephone; I would have to send them a letter."

Pursuant to that statement of the defendants, plaintiff on the next day, July 3, 1920, wrote the following letter to the defendants:

"Your wire received this a. m. In answer will purchase three cars Am. refined you quoted, being too late to make any arrangements to-day, will advise you Tuesday a. m. Further, instead of letter of credit, for entire amount will pay, say, about 15 per cent. of the purchase, on signing of contract or confirmation of order; balance you to draw on me with bill of lading attached. Would really like to know something more about you, or to whom I am intrusting my money. I deposit in Seaboard National Bank, N. Y. Would your bank give reference to Seaboard National. Will be pleased to do business with you in the future if business relations are satisfactory. Thanking you most kindly, I am," etc.

We are of opinion that these letters and telegrams constitute the contract as to the three cars. It was modified, however, in one particular— $2,000 was to be deposited instead of $2,677.50, or 15 per cent. But this change was made by telegram in accordance with the original demand of defendants.

[1] The only evidence in the case in support of the allegation in the statement that there was an oral contract for the delivery of the sugar within seven days is the testimony of the plaintiff that the defendants stated at the first telephone conversation, before the contract was made, that "they could make deliveries to me in Pittsburgh within seven days." This was repeated by Mr. Kramer, she testified, on July 10, 1920, when he was in Pittsburgh.

It will be noted that the plaintiff does not anywhere say that defendants agreed to deliver sugar in Pittsburgh within seven days. All that the defendants said, according to her testimony, was that they *could*, not that they *would*, make deliveries in Pittsburgh within seven days.

There is a vast difference between *could* and *would*, and there is no testimony that they said they *would*. If the defendants did say that they *could* make deliveries within seven days, these words are insufficient to constitute an oral contract under the evidence in this case.

[2] If, however, the defendants had *said* that they *would* make delivery of the sugar in Pittsburgh within seven days, in the face of the letters and telegrams, both before and after the time the oral contract is alleged to have been made, this testimony would have been incompetent and inadmissible. In the absence of fraud, accident, or mistake, none of which is charged here, parol evidence is not admissible to vary, add to, modify, or contradict the terms or provisions of the written instrument by showing the intentions of the parties or their real agreement with reference to the subject-matter to have been different from what is expressed in the writing. De Witt v. Berry, 134 U. S. 306, 10 Sup. Ct. 536, 33 L. Ed. 896; Richards v. Shipley, 257 Pa. 134, 101 Atl. 456; Williams v. Notopolos, 259 Pa. 469, 103 Atl. 290; 22 Corpus Juris, 1098.

[3] The execution of a contract in writing supersedes and merges all oral negotiations or stipulations concerning its terms with reference to the subject-matter. The whole engagement of the parties and the extent of their undertaking is presumed to have been reduced to writing. Insurance Co. v. Mowry, 96 U. S. 544, 24 L. Ed. 674; Ryan v. Ohmer, 244 Fed. 31, 156 C. C. A. 459. The letters and telegrams fully set forth the contract between the parties and the extent of their undertaking. It was to avoid just such a situation as has arisen that the defendants insisted that plaintiff make her order by letter or telegram.

[4] This written contract was definite and complete, and the evidence shows that from beginning to end the parties were acting under its terms, and not those of the alleged oral contract. The conversations over the telephone, whatever they might have been, were merged in the letters and telegrams constituting the contract, and it was error to submit to the jury the question of whether the contract was written, oral, or partly written and partly oral. This question should have been decided by the court as a matter of law. Plaintiff says that the vital part of the transaction was the time within which delivery could be made. In view of that statement, it is significant that there is not a hint about it in any letter or telegram. Before the price of sugar went down and the plaintiff refused to take and pay for the sugar, every letter and telegram is as silent as the tomb as to the time within which delivery was to be made. We are constrained to hold that substantial error was committed in the trial.

The judgment of the District Court will therefore be reversed, and a new trial granted.