Rzasa, Appellant, *v.* Gorniak et al.

Argued May 2, 1934.

Before TREXLER, P.

J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Cyrus A. Davis,* and with him *J. R. Sheppard,* for appellant.

*Harry A. Estep,* and with him *John M. Gallagher,* for appellees.

Opinion by Cunningham, J., October 3, 1934:

The proceeding below was a retrial upon an opened judgment. The verdict was in favor of the use-plaintiff, the wife of the legal-plaintiff, in the amount of $2,285. Defendants, husband and wife, filed motions for a new trial and for judgment in their favor n. o. v. Their motion for judgment n. o. v. was granted upon the technical ground of a variance; hence this appeal by the plaintiff. The motion for a new trial was not disposed of, but the court below, in the course of its opinion supporting the judgment n. o. v., remarked: "We are convinced that the verdict is against the weight of the evidence and, were it not that we feel constrained for the reasons hereinafter stated to enter judgment for defendants *non obstante veredicto,* we would again grant a new trial."

If the testimony given at the trial, by and on behalf

of the plaintiffs, was true, (and, for the purposes of this appeal, we must assume its truth and give them the benefit of every inference fairly deducible therefrom) we think the entering of a final judgment for the defendants is not justifiable.

The fundamental issue in the case is one of fact, namely, whether the defendants borrowed $5,000 from the plaintiffs in March, 1929, as testified to by the plaintiffs and their daughter, or whether the amount borrowed was only $3,000, as asserted by defendants. Two juries have decided that issue in favor of the plaintiffs, but it may be quite possible that the trial court, in the exercise of its salutary power to set aside a verdict, which, in its opinion, is against the weight of the evidence, would be justified in doing so in this case. The substantial question here involved, however, is whether the trial judge should, under all the evidence, have directed a verdict in favor of the defendants; if not, the judgment should be reversed.

It is apparent, from an examination of the record, that the parties, who are of foreign birth and express themselves with difficulty in English, had known each other for more than fifteen years and conducted their transactions, not upon a strictly business basis, but familiarly and informally. As pointed out by the court below, it is true there were serious discrepancies between some of the averments made by the plaintiffs in their answer to the defendants' petition to open and their testimony at the trial, but, in our view, these inconsistencies were for the consideration of a jury and did not constitute a proper basis for the entering of a final judgment in favor of the defendants.

The controversy arose when the legal-plaintiff, on October 31, 1930, confessed judgment against defendants on a judgment note for $3,000, executed by them on March 20, 1929, and assigned the judgment to his wife as use-plaintiff. On February 24, 1931, the de-

50

fendants presented their petition and obtained a rule to open the judgment and let them into a defense; the grounds were that the note, and interest thereon, had been paid about the first of October, 1930, and that the wife defendant had signed the note merely as an accommodation maker for her husband.

In the answer of the use-plaintiff to the rule both defenses were denied, and it was averred that the note "remains due and unpaid." After depositions and argument, the court ordered that the judgment "be opened and the defendants let into their defense." No formal pleadings were prescribed, nor were any issues framed. Under such circumstances, we may assume for present purposes that the petition and answer comprise the pleadings: Williams et al v. Notopolos, 259 Pa. 469, 103 A. 290; State C. of Pa. P. S. of A. v. Kelley, 267 Pa. 49, 110 A. 339; Silent Auto Corp. v. Folk, 97 Pa. Superior Ct. 588.

At the first trial, both plaintiffs admitted that defendants had paid the legal plaintiff $3,000, about October 1, 1930, but asserted that defendants had actually borrowed $5,000 and, accordingly, obtained a verdict for $2,000, with interest. As stated, this verdict was set aside as being against the weight of the evidence.

At the second trial, plaintiffs made out their prima facie case by proving the note. Defendants then adduced testimony in support of the allegations in their petition to open. Counsel for plaintiffs thereupon admitted of record the payment by defendants of $3,000, with interest, on the date alleged.

Plaintiffs then proceeded to show, in rebuttal, that defendants had borrowed $3,000 on March 12, 1929, and an additional sum of $2,000 on March 20th; that a temporary security for the $3,000 was given by pledging real estate of the defendants, which was mortgaged to such an extent that plaintiffs were not

willing to accept it as a permanent security and therefore demanded a note; that the note in suit, dated March 20, 1929, was given when the loan of $2,000 was obtained on that date; that when the payment of $3,000 was made on October 1, 1930, W. J. Gorniak, the husband defendant, expressly agreed and directed that the note be retained as collateral for the unpaid balance of the total loan—$2,000. We think this evidence was properly admitted at that stage of the trial: Schoen et ux. v. Elsasser, 315 Pa. 65, 173 A. 428.

In sur-rebuttal, defendants denied that they had borrowed more than $3,000, and attempted to account for the retention of the note by stating that at the time the payment of $3,000 was made, Rzasa was told to tear it up. The testimony of the legal-plaintiff upon the vital question of the amount actually borrowed by defendants (in which he was corroborated by his wife and daughter) reads: ''Q. You tell us how you came to have possession of that note in October, 1930? A. Mr. and Mrs. Gorniak came down for me in 1929, February 12th, and they asked me can I raise for them $5,000. I said, 'I will try to borrow the money because I don't have enough against the home to borrow $5,000,' and he asked me, 'I need that money for to improve the farm out in Washington County.' They took me over there and they showed me that farm, and 1929, March 12th, he gets $3,000. I raised that at that time. I said, 'A couple days after I will raise another $2,000.' Q. Did you give him the $3,000? A. I gave him $3,000 on March 12th, 1929. ...... Q. Well, did they get any money after March 12th? A. March 20th, [1929] they got $2,000. ...... Q. What occurred at that time? A. March 20th they came down to my house they bring that note, and they get that $2,000. Q. What note did they bring? A. This one here.''

As we read the opinion of the court below, the sole

ground upon which judgment n. o. v. was entered was that the use-plaintiff, in her answer to the petition to open, had stated that the note had not been paid, but at the trial admitted that $3,000 had been paid on October 1, 1930, and that this constituted such "a fatal variance between plaintiff's *allegata* and *probata*" as to justify a judgment in favor of the defendants. We are not prepared to agree that this case should be finally disposed of upon this technicality. If plaintiffs are telling the truth, the note, from their point of view, was still collateral security for $2,000 and had not been paid in full. The petition and answer were not, strictly speaking, formal pleadings; the fact that the details of the transaction were not as fully set out in the use-plaintiff's answer as they should have been, may have been due more to her inability to explain them in English than to any disposition to conceal material facts. The payment of the $3,000 seems to have been frankly admitted at the trial.

Under the testimony, we do not regard the alleged loan of $2,000 on March 20th as a collateral transaction; it was not a matter separate and distinct from the admitted borrowing of the $3,000 eight days previous thereto; according to the plaintiff's testimony, the original application was for $5,000. As we read the evidence, the fair import of the testimony for the plaintiffs is that they understood that the $2,000, which they insisted remained unpaid, was to be considered as secured by and due upon the note. It seems to us that the admission by plaintiffs of the payment of $3,000 amounted, technically, to no more than a failure by them to prove that the entire amount of the judgment was owing. Such a failure does not defeat a plaintiff's right to recover whatever amount may be shown to be due. In other words, it was an admission that they were not entitled to recover more

than $2,000, with interest, and as the verdict was for that amount defendants were given the full advantage of the admission. Of course, if defendants are telling the truth, no more than $3,000 was borrowed by them from plaintiffs, and the verdict should be in their favor. Obviously, the testimony cannot be reconciled and the credibility of the parties is necessarily a question for a jury.

Our conclusion is that the assignment of error to the entering of judgment n. o. v. should be sustained, and the record remitted to the court below for disposition by it of the motion for a new trial.

Judgment reversed and record remitted for disposition by the court below of the pending motion for a new trial.